# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-727-GW(PJWx) | Date | March 27, 2020 |
|---|---|---|---|
| Title | *Dish Network L.L.C., et al. v. Tvizion, LLC, et al.* | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **IN CHAMBERS - RULING ON PLAINTIFF'S MOTION TO AMEND FINAL JUDGMENT TO ADD JUDGMENT DEBTORS [107]**

Attached hereto is the Court's Ruling on Plaintiff's Motion. The Court grants DISH's motion to amend the judgment so as to add NuMedia Global, Inc. and NuMedia Global Hosting, Inc. as judgment debtors. DISH shall submit a proposed amended judgment within seven days of the filing date of this order.

:

Initials of Preparer   JG

*<u>Dish Network L.L.C., et al. v. TVizion LLC, et al.</u>*, Case No. 8:18-cv-00727-GW-(PJWx)
Ruling on Motion to Amend Final Judgment to Add Judgment-Debtors

DISH Network ("DISH") moves to amend the judgment entered April 1, 2019 – which, in part, awarded DISH $5,959,000.00 – after the default of defendants TVizion LLC ("TVizion"), 247 Smart Life, LLC and Ferras Jim Pshehalouk ("Pshehalouk"), individually and collectively d/b/a https://tvizion.com and https://247smartlife.com.  *See* Docket No. 32. Specifically, DISH moves to add NuMedia Global Inc. ("NG") and NuMedia Global Hosting Inc. ("NGH") to the judgment, arguing that they are successor-in-interest corporations to TVizion.  DISH served both NG and NGH with this motion by mail[1] to their respective registered agents for service on February 27, 2020, but neither NG nor NGH have responded to, or opposed, the motion.  Pursuant to Local Rule 7-12, the Court can deem the failure to file an opposition as consent to the motion.

Rule 69(a)(1) of the Federal Rules of Civil Procedure provides that "[t]he procedure on execution – *and in proceedings supplementary to and in aid of judgment or execution* – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1) (emphasis added).  Among other things, the rule allows reliance on state law to add judgment-debtors.  *See Levander v. Prober (In re Levander)*, 180 F.3d 1114, 1120-21 (9th Cir. 1999).  "Under California Code of Civil Procedure § 187, a court 'has the authority to amend a judgment to add additional judgment debtors.'" *Id.* at 1121 (quoting *Issa v. Alzammar*, 38 Cal.App.4th Supp. 1, 4 (1995)); *see also* Cal. Code Civ. Proc. § 187 ("When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code.").

Where a purchasing corporation is a mere continuation of a selling corporation, the purchasing corporation may be added to a judgment as a judgment-debtor.  *See McClellan v. Northridge Park Townhome Owners Ass'n*, 89 Cal.App.4th 746, 754 (2001) ("[W]here the

---

[1] DISH has not specifically provided the Court with authority for the proposition that service of such a motion by mail is a permissible means of adding judgment-debtors to a judgment, as opposed to compliance with the normal requirements for serving a party with process when an action is first initiated against it.

successor corporation is a mere continuation and hence liable for the acts of its predecessor, the liability of the new corporation may be enforced in an independent action . . . . However, in the alternative, a motion pursuant to the procedural mechanism of section 187 enables the court to consider disregarding the corporate entity on any of several theories in order to add an additional judgment debtor."). The Ninth Circuit has instructed that "[t]o be a mere continuation, California courts require evidence of one or both of the following factual elements: (1) a lack of adequate consideration for acquisition of the former corporation's assets to be made available to creditors, or (2) one or more persons were officers, directors, or shareholders of both corporations." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1150 (9th Cir. 2004). Immediately after that pronouncement, however, it also stated that "[i]nadequate consideration is an 'essential ingredient' to a finding that one entity is a mere continuation of another." *Id.*

Here, a former "Four Star Director" and "Director of Marketing Globally" for TVizion, Francis J. Healey ("Healey"), has provided a declaration in support of DISH's motion. *See* Declaration of Francis J. Healey ("Healey Decl."), Docket No. 107-2. Healey reports that when he first joined TVizion, Pshehalouk told him that Pshehalouk was the President and sole owner of TVizion. *See* Healey Decl., ¶ 5; *see also* Declaration of Bert Eichhorn ("Eichhorn Decl."), Docket No. 107-3, ¶ 14 & Exh. 12. Healey worked under Pshehalouk and Pshehalouk's "right hand men," Anthony Nitz ("Nitz") and Scott Miyano ("Miyano"), who were in charge of "affiliates" (resellers of subscriptions to TVizion's streaming service). *See* Healey Decl. ¶ 6.

Healey reports that in the Summer of 2018 – after this lawsuit was filed – Pshehalouk told him that he had created NG and had rebranded the TVizion streaming service as the NuMedia Global streaming service because TVizion was a defendant in this lawsuit. *See id.* ¶ 12. Pshehalouk is NG's Manager and Incorporator. *See* Eichhorn Decl. ¶ 6 & Exh. 1. Pshehalouk told Healey that he (*i.e.* Pshehalouk) was the CEO, President and sole owner of NG, that the financial aspects of NG would be handled by his wife, Deanna Pshehalouk ("Deanna"), and that Miyano and Nitz would be in charge of the NG affiliates. *See* Healey Decl. ¶ 13; *see also* Eichhorn Decl. ¶ 16 & Exh. 13. Deanna had also handled the "financial responsibilities" for TVizion. *See* Healey Decl. ¶ 13.

Pshehalouk told Healey that Pshehalouk planned to operate NG and its streaming service in the same manner that TVizion had operated, and that he was simply transferring all of

TVizion's subscribers, financial accounts and back-office infrastructure over to NG.  *See id.* ¶ 14.  Pshehalouk was also rebranding TVizion's marketing material in NG's name.  *See id.*  Pshehalouk told Healey not to recruit any new affiliates or customers to TVizion's service because it was being rebranded.  *See id.* ¶ 15.

Over the course of the next few months, the TVizion customers and affiliates Healey had recruited were transferred to NG's streaming service.  *See id.* ¶ 16.  The customers' subscription payments were also directed to NG accounts instead of TVizion accounts.  *See id.*  NG employed the same employees and affiliates as had worked for TVizion and Pshehalouk, and Pshehalouk told Healey that the streaming service's content provider was the same.  *See id.* ¶ 17.  Healey knows of no assets that Pshehalouk left in TVizion.  *See id.* ¶ 18.

In April 2019, Pshehalouk told Healey and Nitz that while he was going to continue operating the streaming service in the same manner as usual, Pshehalouk was going to form another entity, NGH, to take in the customer payments from the rebranded streaming service.  *See id.* ¶ 19.  Pshehalouk also said he was transferring all of NG's subscribers, financial accounts and back-office infrastructure to NGH.  *See id.*  According to Healey's declaration, as with the transfer from TVizion to NG, Pshehalouk wholly-owned and controlled both entities, so he could do so for no consideration.  *See id.*  Pshehalouk said he was using the NG and NGH entities to continue operating the streaming service despite this litigation, and to protect the income he and his employees were receiving from the service.  *See id.*  NGH employs the same employees and affiliates as NG and TVizion had before it.  *See id.* ¶ 21.  Pshehalouk told Healey that affiliates' and employees' commissions would be paid from NGH's bank accounts going forward, and that Deanna would handle NGH's "financial aspects."  *See id.* ¶ 20.

DISH has also presented a declaration from an individual named Bert Eichhorn ("Eichhorn"), a licensed Private Investigator and the Manager of Field Security and Investigations for a company called NagraStar LLC ("NagraStar").  *See* Eichhorn Decl. ¶¶ 2-3.  Eichhorn previously worked for DISH for eight years as a Senior Investigator and Auditor in the Signal Integrity department, which investigated theft or piracy of DISH's programming.  *See id.* ¶ 3.  At NagraStar, Eichhorn is responsible for investigating piracy matters, in particular the piracy or compromise of NagraStar's encryption technology DISH uses to protect its signal.  *See id.* ¶ 4.

A third-party purchased a subscription to NG's streaming service at Eichhorn's direction.

3

*See id.* ¶ 8. NagraStar thereafter conducted six tests from July 12, 2018 to February 4, 2019, to determine whether NG's streaming service was distributing DISH's signal, testing only a small percentage of the channels available on NG's service. *See id.* ¶¶ 9-10. Those six tests revealed that NG was distributing DISH's transmission of the Willow cricket channel. *See id.* ¶ 10 & Exhs. 3-8. In addition, two tests conducted in August 2019 – again testing only a small percentage of the channels available on NG's service – revealed that NG's service was distributing DISH's transmission of the Discovery Channel. *See id.* ¶ 11 & Exhs. 9-10.

Eichhorn determined that NGH was formed less than two weeks after DISH secured the default judgment in this action. *See id.* ¶ 12 & Exh. 11. Deanna is NGH's Secretary and Treasurer, and lists a service address that is the same as the one for Pshehalouk. *See id.* Miyano is listed as NGH's President and Director. *See id.* ¶ 13 & Exh. 11.

The evidence also reveals that TVizion's bank accounts were closed in August-September 2018, while NG was opening up the first of its bank accounts in June and August 2018. *See id.* ¶¶ 15-16, 21 & Exhs. 12-13, 16. With respect just to accounts held at Bank of America, the evidence reveals $28,500 being transferred from TVizion's accounts held at that institution to two accounts NG held there by way of five transactions between June 20 and July 31, 2018. *See id.* ¶¶ 22-23 & Exhs. 15-16. NG's bank accounts were closed in November 2018, March 2019 and May 2019. *See id.* ¶¶ 17, 19, 24, 26 & Exhs. 13-14, 16-17.

Deanna and Miyano opened NGH's account with Bank of the West on May 20, 2019. *See id.* ¶ 27 & Exh. 18. That bank account received deposits of $390,000 between May-October 2019, amounts that are roughly consistent with deposits into TVizion's and NG's bank accounts prior to that period, when those accounts were in existence. *See id.* ¶ 29 & Exh. 18.

DISH has been unable to locate any assets in TVizion's name, and TVizion and Pshehalouk have made no attempt to satisfy the Judgment entered in this case. *See id.* ¶¶ 30-32. Pshehalouk and TVizion never informed DISH or NagraStar that NG and NGH were being formed or that any of TVizion's assets were being transferred to those entities. *See id.* ¶ 33.

In *McClellan*, the California Court of Appeal affirmed the trial court's finding that the new homeowners' association was a mere continuation of the prior association. In doing so, it relied, in part, on facts that are analogous to those present here:

> The new entity, Northridge Park, was the homeowners association for the same condominium complex, whose membership consisted of the same unit owners. The same individuals served on the boards of Peppertree and Northridge

4

>Park. The same management company remained in place. Both Peppertree and Northridge Park derived their income from the homeowner dues assessed to the membership.

89 Cal.App.4th at 756. Here, DISH has been unable to locate any assets held by TVizion, thereby at least strongly suggesting that there was no consideration transferred from NG to TVizion for TVizion's assets. Moreover, the evidence indicates that Pshehalouk was simply using NGH – which he formed less than two weeks after the default judgment was entered in this case – to continue operating the streaming service despite this litigation and to take in customer payments in order to protect his and his employees' income, and that he did so by way of, in part, transferring all of NG's subscribers, financial accounts and back-office infrastructure to NGH for no consideration. As TVizion's bank accounts closed down and the money-streams dried up, NG's bank accounts opened up and the cash-spigot opened. The same pattern soon thereafter repeated, with NG's bank accounts closing down and NGH's bank accounts opening, with the latter suddenly freshly awash in deposits. With these facts established (or at least not opposed, given NG's and NGH's failure to respond to this motion), the Court easily concludes that DISH has demonstrated a lack of adequate consideration for acquisition of TVizion's assets. *See Katzir's Floor & Home Design*, 394 F.3d at 1150.

       As for the second factual element California law recognizes – one or more persons were officers, directors, or shareholders of both corporations, *see id.* – the evidence supports the conclusion that Pshehalouk was: the President and sole owner of TVizion; the Manager, Incorporator, CEO, President and sole owner of NG; and that he was the driving force behind forming NGH and transferring all subscribers, financial accounts and back-office infrastructure from NG to NGH, for no consideration. There is at least some evidence that Pshehalouk wholly-owned and wholly-controlled both NG and NGH. While Deanna – Pshehalouk's wife – might be NGH's Secretary and Treasurer, and Miyano – one of Pshehalouk's "right hand men" – might be NGH's President and Director, the factual record clearly demonstrates that Pshehalouk was the driving force behind all of the corporate maneuvering aimed at continuing the operation of the streaming service at issue.

       The Court will not permit Pshehalouk and TVizion to avoid the California authority that allows for amending a judgment to add judgment-debtors who constitute a "mere continuation" of the original corporate debtor simply because Pshehalouk decided to select people other than himself to serve as the latest corporate iteration's key officers and directors, especially when he

clearly continued to pull the strings behind the scenes.  *See Carr v. Barnabey's Hotel Corp.*, 23 Cal.App.4th 14, 20 (1994) ("'The greatest liberality is to be encouraged in the allowance of such amendments in order to see that justice is done.'") (quoting *Carman v. Athearn* 77 Cal.App.2d 585, 594 (1947)); *Cleveland v. Johnson*, 209 Cal.App.4th 1315, 1330 (2012) ("[S]uccessor liability, like alter ego and similar principles, is an equitable doctrine.  As with other equitable doctrines, 'it is appropriate to examine successor liability issues on their own unique facts' and '[c]onsiderations of fairness and equity apply.'") (quoting *CenterPoint Energy, Inc. v. Superior Court*, 157 Cal.App.4th 1101, 1122 (2007)); *see also Wolf Metals Inc. v. Rand Pac. Sales, Inc.*, 4 Cal.App.5th 698, 709-11 (permitting post-default judgment amendment of judgment to add successor corporation as judgment-debtor, stating that "when a judgment is entered against a corporation due to its failure to litigate a defense, due process is not contravened by the amendment of the judgment to include a corporation that is the defendant's mere continuation").  In addition, even if a successor-liability theory would not work *as to NGH* because there was no *direct* transfer from TVizion to NGH, *see Katzir's Floor & Home Design*, 394 F.3d at 1151, NGH may still be liable for TVizion's debts "when the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts."  *Cleveland*, 209 Cal.App.4th at 1334 (omitting internal quotation marks).  The evidentiary record is clearly sufficient to reach that conclusion here as well.

      For the foregoing reasons, the Court <u>grants</u> DISH's motion to amend the judgment so as to add NuMedia Global Inc and NuMedia Global Hosting Inc as judgment debtors. DISH shall submit a proposed amended judgment within seven days of the filing date of this order.